**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION**

HAWKS NEST CONDOMINIUM, INC.,

      Plaintiff,

v.                                                                CASE NO.: 4:24-cv-10013-JEM

WESTCHESTER SURPLUS LINES INSURANCE
COMPANY,

      Defendant.

_____/

**<u>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR
FINAL SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY
JUDGMENT AND REQUEST FOR HEARING</u>**

Plaintiff, Hawks Nest Condominium, Inc. ("Hawks Nest") submits this opposition to Defendant's Motion for Final Summary Judgment, or, Alternatively, Partial Summary Judgment. ECF No. [115].

**RESPONSE IN OPPOSITION TO WESTCHESTER'S MOTION FOR FINAL JUDGMENT ON THE STATUTORY BAD FAITH VIOLATIONS UNDER FLORIDA STATUTES § 624.155**

## I.   MEMORDANUM OF LAW

Westchester asserts that this Court cannot consider §§ 624.155(1)(a), 626.9541(1)(i)(3)(b), 626.9541(1)(i)(3)(c), 626.9541(1)(i)(3)(d) because the CRN did not cite each provision. Westchester is incorrect. Plaintiff is not limited to the statutory violations only listed in the CRN. Plaintiff has plead §§ 624.155(1)(a), 624.155(1)(b), 626.9541(1)(i)(3)(a), 626.9541(1)(i)(3)(b), 626.9541(1)(i)(3)(c), 626.9541(1)(i)(3)(d), 626.9541(1)(i)(3)(e) and is entitled to present these provisions because Westchester's bad faith is determined under the totality of the circumstances. ECF No. [1-1], p. 8-9, ¶¶49, 53, 56. *Demase v. State Farm Florida Ins. Co.*, 351 So. 3d 136 (Fla. 5th DCA 2022); *Pin-Pon Corp. v. Landmark Am. Ins. Co.*, 500 F. Supp. 3d 1336 (S.D. Fla. 2020).

Westchester argues that Hawks Nest's claims are limited to the testimony of its expert, Dan Doucette. That's not the law. Perhaps that is why Westchester cites no case law to support its assertation. Indeed, an expert aids the fact finder with his expertise, he does not determine the ultimate conclusion. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois U.K. Ltd*., 326 F.3d 1333, 1340 – 41 (11th Cir. 2003).  In sum, Westchester's contention that Hawks Nest's claims are limited by an expert's testimony fails.

Lastly, Westchester mischaracterizes Mr. Doucette's testimony in its Motion and Statement of Facts. Westchester also appears to request that certain opinions of Mr. Doucette be

excluded. A motion for summary judgment is not the proper vehicle to seek such a request and should be excluded. *See* ECF No. [70].

## II.   ARGUMENT

### A.  Westchester is not entitled to summary judgment on its CRN violations.

#### i.   Westchester is not entitled to summary judgment on Plaintiff's § 624.155(1)(b)(1), Fla. Stat. claim.

First, Westchester asserts that Hawks Nest is not the insured because the Policy is issued to "Hawks Nest Condominium Association, Inc." as opposed to "Hawks Nest Condominium, Inc." This argument ignores that (1) Hawks Nest owns the location insured by the Policy, (2) Westchester litigated any entire coverage case against Hawks Nest and never made this argument; and (3) Westchester paid Hawks Nest the appraisal award. ECF Nos. [80-1], [80-3], [93-7]. At bottom, Westchester waived this defense both in its response to the CRN and through its conduct. *See Vachon v. Travelers Home & Marine Ins. Co.,* 403 So. 3d 451 (Fla. 2nd DCA 2025).

Second, a reasonable jury can conclude Westchester violated § 624.155(1)(b)(1). The ultimate question here is whether Westchester is liable for "[n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests." Fla. Stat. § 624.155(1)(b)(1). The "question of whether an insurer has acted in bad faith in handling claims against the insured is determined under the 'totality of the circumstances' standard." *Berges v. Infinity Ins. Co*., 896 So. 2d 665, 668-69 (Fla. 2004). The fact-finder makes this determination. *Kinsale Ins. Co. v. Pride of St. Lucie Lodge 1189, Inc.*, 135 F.4th 961, 968 (11th Cir. 2025). That's particularly true for questions such as whether an insurer used "reasonable diligence" and "ordinary care." *Mesa v. Clarendon Nat. Ins. Co.*, 799 F.3d 1353, 1359 (11th Cir. 2015).

Here, there are material questions of fact that preclude summary judgment.  Westchester

insured the building for $5,143,07.00.  ECF No. [101-3], p. 7. Hawks Nest timely made a claim on September 13, 2017. ECF No. [101-1], p. 97:12-13. As early as September 27, 2017, the Westchester adjustor noted that "the damages appear to be significant." ECF No. [101-1], p. 178:1-15. Westchester hired a third-adjusting company, VeriClaim, which held itself out as a "Sedgwick Company," to investigate the claim. ECF No. [101-1], p. 170:14-22. The claim file shows that from the  initial claim notification to mid-November, Westchester primarily just requested updates from VeriClaim as to the status of the claim. ECF No. [101-4], pp. 1-2. It is not until November 27, 2017—two months after the Irma—that VeriClaim advised Westchester that it needed an engineer. *Id.* at p. 2. Westchester received VeriClaim's First Report dated December 12, 2017, and noted that damages are "$1.25m gross / $1.02m net" and "[b]ased on exposure and protocol the claim will be escalated to the Complex Claim Unit."  *Id.* at p. 3.

Westchester largely ignored Hawks Nest and its agents during the claims handling process. Hawks Nest hired a public adjustor, George Keys of Keys Claims Consultants, hoping to resolve the claim "quick[ly]." ECF No. [92], p. 37:14 – p. 38:2.  After discovering that the building had life safety issues, on February 14, 2018, Mr. Keys notified Westchester that their "structural engineer deems the building  total loss and dangerous." ECF No. [101-1], p. 10-20; ECF No. [101-24]. Westchester did not respond to this letter. ECF No. [101-4]. On March 1, 2018, Mr. Keys sent a second notice to Westchester, advising of the safety concerns and requesting immediate tender of payment. ECF No. [101-1], p. 196:9-21; ECF No. [101-25]. Westchester simply asked Mr. Keys to copy the VeriClaim adjustor on correspondence. ECF No. [101-1], p. 197:7-18; ECF No. [101-26]. The only communication from Westchester to Hawks Nest was a denial of Hawks Nest's request for payment of its mitigation services performed by a third-party vendor. ECF No. [104-9]; ECF No. [104-31], p. 4.

Westchester consistently ignored Hawks Nest's pleas for a response. Hawks Nest's insurance agent even stated "I don't understand why it is so difficult to get a status (or even a response) from an adjustor." ECF No. [104-31], pp. 1-2. The Westchester adjustor replied in writing that "any communication on this one needs to be done verbally" in direct violation of its Chubb's (Westchester's parent company) "Best Practices" Guidelines and Adjustor Code of Ethics. *Id.;* ECF No. [101-1], p. 215:17-23.

Despite noting the need for an engineer as early as November 2017, Westchester did not hire an engineer until March 5, 2018. ECF No. [101-4], pp. 6, 8. Hawks Nest's engineering report dated March 14, 2018 confirmed the existence of significant damage to the building. Westchester engaged Michael Connor at Unified, a sister company of VeriClaim and also a Sedgwick Company. ECF No. [121-1], at p. 19:14-24. Mr. Connor testified that "90 to 95 percent of the work that [he does] is through insurance companies. . . ." *Id.* at p. 21:18-23. Unified conducted a site inspection on April 24, 2018 and issued a report on May 31, 2018. *Id.* at p. 29:21-24; p. 30:7-13. The adjustor, Mr. Crocker, reviewed the report on June 1, 2018. ECF No. [101-4], p. 8. Westchester never sent this report or explained its findings to Hawks Nest until Westchester responded to the CRN in June of 2019. ECF No. [106-27], p. 6.

On May 11, 2018, Westchester offered $23,801.17 as "undisputed" amounts, claiming that its investigation was ongoing and that "Unified is still in the process of completing their report." ECF No. [102-3]. Westchester never explained how or why it arrived at $23,801.17. ECF No. [102-3].

Westchester continued to largely ignore the Plaintiff throughout the spring of 2018. Mr. Keys asked for updates and payment status. ECF No. [105-1]. Even VeriClaim's Fifth Report to Westchester requested several items to complete their investigation, noting: "We request a

response be provided at the earliest opportunity to enable us to move forward in properly adjusting this claim. . . " ECF No. [105-5], p. 1. Fearing the worst and needing money to repair the building, Hawks Nest sought a line of credit for repairs. ECF No. [92], p. 19-25. It was ultimately denied a loan. ECF No. [91], p. 25:18-25.

On June 19, 2018, after no word from Westchester, Mr. Keys submitted Sworn Proofs of Loss in the amount of $5,143,073.00 for the Building and Personal Property Coverage and $25,000.00 for Debris Removal Coverage and concurrently requested appraisal. ECF No. [106-1]. Westchester's third-party adjustor confirmed receipt the same day. ECF No. [101-1] at p. 229:3-16. The policy required Westchester to give notice of its intention within 30 days after receipt of the sworn proof of loss. *Id.* at p. 54:15-18. Westchester admitted that it did not substantively respond to the Proofs of Loss throughout the entire month of June and July. *Id.* at p. 230:7-20. Westchester's corporate representative testified it failed to respond to the Proofs of Loss and demand for appraisal in violation of its own policy and standards. ECF No. [101-1], p. 230:1-20.

After 45 days of silence, Hawks Nest sued Westchester to compel appraisal. ECF No. [106-7]. Westchester failed to timely appear despite being properly served and internally acknowledged receipt of the lawsuit. ECF No. [87-2]. Consequently, Westchester was defaulted. *Id.* Westchester internally acknowledged and discussed the default but did nothing. ECF No. [99-1], p. 24:11-19; ECF No. [106-18], pp. 2-13.

Over **100 days** passed between (1) the Proofs of Loss and demand for appraisal and (2) the entry of the default order **with absolutely no communication from Westchester**. Even Westchester's claims handling expert admitted that this was not good claims handling and "not up to [Chubb's] standards." ECF No. [109-1], p. 46:1-19, p. 47:3-14.

Near the end of October 2018, Westchester hired an attorney to vacate the default judgment

and assert affirmative defenses. ECF Nos. [106-19]-[106-25]. Westchester never raised an affirmative defense that asserted Hawks Nest was not the correct insured or otherwise entitled to proceeds under the policy. *Id.* Then, on April 24, 2019, Hawks Nest filed its CRN. ECF No. [79-6]. Westchester responded on June 21, 2019. *Id.* Again, Westchester never argued the CRN was deficient because Plaintiff was not the insured. ECF No. [106-27]. Nor did Westchester ever suggest it could not respond to the CRN because the party named in the CRN was different than the party to the existing lawsuit. Nor did Westchester's prior two counsels even plead or consider this classic "gotcha" defense which defense has led to the appellate rebuke of defense counsel's tactic so very recently. *See Vachon,* 403 So. 3d 451.

Westchester's counsel admitted at a hearing on its Motion to Vacate that the appraisal suit "slipped through the cracks." ECF No. [99-1], p. 10:11-12. The state court agreed and found that Mr. Crocker "certainly dropped the ball, him and probably others as well." ECF No. [99-1] at p. 45:21-22.

During appraisal, Westchester did not adjust, investigate, or evaluate the claim. ECF No. [101-4]. Westchester's appointed appraiser testified that no one at Westchester requested an update and that the appraisal process does not require Westchester to "readjust the claim…". ECF No. [98-1], p. 19:21 – p. 20:12, p. 34:13-19. This is in direct contradiction to the testimony from Westchester's claims handling expert, Erin Finn, who testified that Westchester owed a duty to adjust the claims through resolution and that appraisal is a method of adjusting the claim. ECF No. [109-1], p. 9-20; 131: 8-14.

An umpire eventually issued an award in the amount of $7,291,136.88, well over the policy limits and Westchester's only offer of $23,801.17. ECF No. [106-30] – [106-32]. On March 12, 2021, Hawks Nest and Westchester's appraisers received the award.  ECF Nos. [98-15] and [98-

16]. But Westchester did nothing. It failed to timely pay the award. When it finally issued a check, it did so for the incorrect amount. ECF No. [109-1], p. 107:3-20; ECF No. [101-1], p. 261:7-16.

In sum, Westchester never made any offers to resolve Hawks Nest's claim, other than $23,801.17. ECF No. [86], p. 22-23. Westchester's conduct throughout the claim demonstrates a failure to properly investigate, communicate, evaluate and adjust Plaintiff's claim. Thus, summary judgment is inappropriate.

## ii.  Westchester is not entitled to summary judgment on Plaintiff's §624.155(1)(b)(3), Fla. Stat. claim

Hawks Nest submitted two Sworn Proofs of Loss: one in the amount of $5,143,073.00 for the Building and Personal Property Coverage and one in the amount of $25,000.00 for Debris Removal Coverage. ECF No. [106-1]. Westchester never addressed the debris removal claim. Rather, Westchester only offered $23,801.17 for the Building and Personal Property Claim. That's because Westchester never adjusted or evaluated the Debris Removal coverage and only focused on the Building and Personal Property Coverage. At the very least, there is a material fact in dispute as to Westchester's violation of § 624.155(a)(b)(3), Fla. Stat. As such, Westchester is not entitled to summary judgment on § 624.155(1)(b)(3).

## iii.  Westchester is not entitled to summary judgment on Plaintiff's §626.9541(1)(i)(3)(a), Fla. Stat. claim.

Section 626.9541(1)(i)(3)(a), Fla. Stat., states that failing to adopt and implement standards for proper claim investigation is an unfair or deceptive act or practice. Westchester failed its own standards. Westchester defines the term "implement" to mean "follow," "carry-out" or "accomplish." ECF No. [115], pp. 8-9. Even under Westchester's definitions, Westchester failed to implement standards. Put plainly, Westchester had guidelines that, by its expert's admission, Westchester did not follow. ECF No. [109-1], p. 46:1-19, p. 47:3-14.

Westchester, through its parent company, Chubb, issued guidelines titled "Property National Desk Unit (NDU) Best Practices Guidelines" ("Guidelines"). ECF No. [120-3], p. 1; ECF No. [120-4], p. 1. The Guidelines state: "The Best Practices Guidelines are designed to provide the Property National Desk Unit (NDU) Adjustor with an outline of service and technical handling **expectations** in the adjustment of property claims" and that "[t]hese guidelines provide service and technical **expectations** for the critical activities that follow." ECF No. [120-4], p. 3; ECF No. [120-3], p. 3. (emphasis added). The Guidelines go on to list several activities and the tasks associated with that that the adjustors are "expected" to follow. *Id.*

For example, the Guidelines stated that "[a]ll pertinent communication should be documented in the claim file." *Depo. of Westchester Corp. Rep.*, p. 215:17-25; ECF No. [120-3], p. 5. Mr. Crocker did not do that. *Id.* Hawks Nest constantly requested updates: (1) on March 19, 2018, the broker requested an update (ECF No. [104-31] - *Ex. 24 to Westchester Corp. Rep.*); (2) on March 20, 2028, the broker again request that the status be put in email (*id.*) and (3) later requests a status, nothing that the claim is 6 months old (*id.* at pp. 1-2); Mr. Crocker writes "any communication on this one needs to be done verbally." *Id.* When asked why Mr. Crocker put that, which was in clear violation of their Guidelines, Westchester's Corporate Representative stated "I don't know why he would've written that." ECF No. [101-1], p. 214:3-11. Communicating only verbally violated Westchester's Guidelines. *Id.* at p. 215:17-22.

The Guidelines also stated: "[a] written response to the proof of loss must be provided consistent with applicable jurisdictional guidelines and policy conditions." ECF No. [120-3], p. 5. Westchester's corporate representative testified that it flat out failed this requirement. ECF No. [101-1], p. 230:1-20. The Guidelines required that the adjuster should do a "Large Loss Notice" to properly set reserves to provide "a thorough evaluation of the damages and the ultimate

exposure." ECF No. [120-3], p. 8. Westchester's corporate representative testified that there was no large loss report or EWS prepared, but that there "should have been." ECF No. [101-1], p. 140:19-141:2; p. 144:13-20. The Guidelines also stated that that "Diaries **should not** exceed 30 calendar days." ECF No. [120-3], p. 9. (emphasis added). A review of the claim notes shows that this was repeatedly violated, with a three-month gap between June 2018 to October 2018 where no activity was done and/or recorded. *See* ECF No. [101-4], pp 8-9.

At bottom, Westchester did nothing and its corporate representative admits it did nothing. Westchester's failure to act violated its Guidelines. A reasonable jury can, therefore, find in Hawks Nest's favor on § 626.9541(1)(i)(3)(a). Thus, Westchester is not entitled to summary judgment.

### iv.   Westchester is not entitled to summary judgment on Plaintiff's §626.9541(1)(i)(3)(e), Fla. Stat. claim.

Section 626.9541(1)(i)(3)(e), Fla. Stat. states the following is an unfair or deceptive act or practice : "[f]ailing to affirm or deny full or partial coverage of claims, and, as to partial coverage, the dollar amount or extent of coverage, or failing to provide a written statement that the claim is being investigated, upon the written request of the insured within 30 days after proof-of-loss statements have been completed."

Mr. Doucette opined that: "[Westchester] failed to properly respond to the submission of the Proofs of Loss, contrary to the custom and practice in the industry, contrary to the policy language, and as contrary to the UCPA, 626.9541)i)(3)." ECF No. [89-1], p. 12. In fact, Westchester did not respond to the Proofs of Loss. ECF No. [89], p. 30:10-14; pp. 68:24-69:6. Westchester admitted it received the Proofs of Loss dated June 19, 2018. ECF No. [101-1], p. 228:20-21. Per the policy, Westchester had to give notice of its intention within 30 days after receipt of the sworn proof of loss. *Id.* at p. 54:15-18. Westchester admits that it did not respond to the Proofs of Loss, other than to admit receipt, throughout the entire month of June and July. *Id.*

at p. 230:7-20. Westchester's corporate representative testified this failure breached the Policy. ECF No. [101-1], p. 230:1-20.

In August, Plaintiff filed suit because it never heard from Westchester about the Proofs of Loss. *Id.* at 231:4-18. Westchester's only mention to the Proofs of Loss are contained in its response to the CRN, which only states that it received them and addresses the request for appraisal on the merits. ECF No. [79-6], p. 10. Westchester cannot point to a single document that timely responded to the Proofs of Loss because it did not. The "cure" in the CRN was to pay the amounts listed in the Proofs of Loss or agree to go to appraisal. Westchester did neither option. *Id.* at p. 10 ("neither of these options are agreeable to Westchester.").  As such, Westchester is not entitled to summary judgment on § 626.9541(1)(i)(3)(e).

**v.  Westchester is not entitled to summary judgment on Plaintiff's §626.9541(1)(i)(3)(f), Fla. Stat. claim.**

Section 626.9541(1)(i)(3)(f), Fla. Stat. states that failing to promptly provide a reasonable explanation for the offer of compromise or denial of a claim is an unfair or deceptive act or practice. Westchester did not promptly offer its undisputed amounts. Rather, Hawks Nest's representatives, constantly asked for updates on the status of the claim and payment of undisputed amounts. On February 14, 2018 (5 months after the date of loss), Mr. Keys requested an update and stated that the building was "a total loss and dangerous." ECF No. [101-24]. The letter further requested that they "tender payment for what you deem is the proper measure of damages without delay." *Id*. Westchester did not respond.

On March 1, 2018, Mr. Keys sent a second notice to Westchester that requested immediate tender of payment. ECF No. [101-1], p. 196:9-21; ECF No. [101-25]. Westchester simply instructed Mr. Keys to copy the VeriClaim adjustor on correspondence. ECF No. [101-1], p. 197:7-18; ECF No. [101-26].  That same day, the third-party adjustor prepared a letter for the

Westchester's adjustor's, Mr. Crocker, review, which did not get reviewed until May 11, 2018. ECF No. 104-1; ECF No. [102-3].

In the meantime, Hawks Nest's broker emailed Mr. Crocker on  March 19, 2018, and March 20, 2018, requesting an update, wherein Mr. Crocker responds that "any communications on this one needs to be done verbally." ECF No. [104-31].  On May 2, 2018, Mr. Keys followed up and stated, "we discussed the pending payment for undisputed damages." ECF Nos. [105-1] – [105-4]. Mr. Keys requested the "status of the payment." *Id.*  Between May 8, 9, and 10, 2018, the Hawks Nest's insurance agent also requested an update on the undisputed amount payment. ECF No. [105-11]. On May 11, 2018, the third-party adjustor emailed Mr. Keys and stated that the undisputed ACV claim is $23,801.17. ECF No. [102-3]. There was no basis for this amount because the engineer retained by Westchester was "still in the process of completing their report." *Id.* Plus, Hawks Nest never received the Unified engineering report until it sued Westchester. Clearly, Westchester never provided a basis or any reasoning for their offer of $23,801.17, let alone the engineering report which ended up being their basis for any further payments on the claim. As such, Westchester is not entitled to summary judgment on § 626.9541(1)(i)(3)(e).

### vi.  Westchester is not entitled to summary judgment on Plaintiff's §626.9541(1)(i)(3)(g), Fla. Stat. claim.

Section 626.9541(1)(i)(3)(g), Fla. Stat. states that failing to promptly notify the insured of any additional information for processing a claim is an unfair or deceptive act or practice. The clearest example of Westchester's breach of this provision is its failure to respond to the Proofs of Loss and appraisal demand within the time provided in the Policy and default judgment on the same in the Coverage Lawsuit. Additionally, the CRN specifically laid out how Westchester could cure: 1) pay the amounts in the sworn Proofs of Loss **or** 2) agree to go to appraisal. Westchester

rejected both.  ECF No. [79-6], p. 10. (emphasis added). Westchester failed to communicate with insured at all. As such, Westchester is not entitled to summary judgment on § 626.9541(1)(i)(3)(e).

### vii.   Westchester is not entitled to summary judgment on Plaintiff's claims of violations of the Administrative Code.

Hawks Nest has brought one cause of action against Westchester – Statutory Violations of § 624.155, Fla. Stat. ECF No. [1-1], p. 7. Under this cause of action, the Complaint against Westchester asserts numerous violations under § 624.155 and § 626.9541, Florida Statutes, as well of violations of Florida Administrative Code 69O-220.201, which is commonly referred to as the "Florida Adjuster Code of Ethics." *Id.* The Florida Adjustor Code of Ethics has not been repealed but is now mandated by §§626.854 and 626.8796, Florida Statutes (which are contained in paragraph 69 of the Complaint (ECF No. [1-1, p. 12]) and rule 69B-220.051, Florida Administrative Code.

There is no independent cause of action for a violation of Adjustor Code of Ethics. *See Kuhlman v. Crawford & Co*., 2002 WL 34368089, at *4 (S.D. Fla. Jan. 23, 2002). Hawks Nest asserts that Westchester's violation of the Florida Adjuster Code of Ethics is evidence that Westchester failed to comport with the standards and practices of the insurance industry under the totality of circumstance standard. There is no case law that prohibits a violation of the Adjuster Code of Ethics from being presented as evidence of a breach of industry standards for good faith claim handling. In fact, Florida courts have deemed evidence of a violation of an ethical duty to be relevant and admissible as evidence of negligence. *See United Fire & Cas. Co. v. Progressive Express Ins. Co.,* No. 2023 WL 6376383, at *1 (M.D. Fla. Sept. 30, 2023); *Primeaux v. Progressive Am. Ins. Co*., 2022 WL 3155373, at *2 (M.D. Fla. Aug. 8, 2022); *LaVigne v. Safeco Ins. Co. of Ill*., 2018 WL 6308677, at *7 (M.D. Fla. Sept. 12, 2018). Thus, Westchester is not entitled to summary judgment on violations of the Florida Administrative Code.

**B.  Plaintiff filed a CRN**

Westchester argues that Plaintiff failed to satisfy a condition precedent. ECF No. [115], p.

11. Not so. Westchester waived this argument by not raising any of these arguments in its response

to the CRN. *See Vachon.,* 403 So. 3d at 454.

<u>**RESPONSE IN OPPOSITION TO WESTCHESTER'S MOTION FOR SUMMARY
JUDGMENT ON DAMAGES**</u>

**I.    ARGUMENT**

Section 624.155(4), Florida Statutes proscribes a broad remedy and provides that "[u]pon

adverse adjudication at trial or upon appeal, the authorized insurer shall be liable for damages,

together with court costs and reasonable attorney's fees incurred by the plaintiff." This entitles

Hawks Nest to more than its contractual recovery. *See, e.g., Marracini v. Clarendon Nat'l Ins. Co*.,

2003 WL 22668842 *2 (S.D. Fla. Oct. 1, 2003) (quoting *Time Ins. Co. v. Burger*, 712 So. 2d 389,

392 (Fla. 1998)).

Westchester incorrectly states that Hawks Nest must show that its damages were "caused

by" Westchester's bad faith conduct. ECF No. [115], p. 12. Not so. Westchester's assertion is a

tort causation standard. But here, conduct need not be the sole cause of the damage, but one of

several concurring causes. *See Kafie v. Northwestern Mut. Life Ins. Co.*, 834 F.Supp. 2d 1354 (S.D.

Fla. 2011); Fla. Std. Jury Instructions (Civil) 404.6(c).

Bad faith damages need only be reasonably foreseeable, and can include consequential

damages occasioned by Westchester's breach of contract not otherwise awarded in the coverage

case, unpaid interest, any adverse financial impact on the insured occasioned by Westchester's

conduct, attorney's fees and costs pursuant to section 624.155(4), and interest on the amount found

due. Fla. Stat. § 624.155(8); *Fridman v. Safeco Ins. Co. of Ill.*, 185 So. 3d 1214, 1223 (Fla. 2016);

*Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins. Co*., 945 So. 2d 1216, 1243-44 (Fla. 2006).

Moreover, the question of whether Westchester's conduct "caused" Hawks Nest's damages is a question for the jury as exemplified by Florida Standard Jury Instruction, which sets forth the causation standard in bad faith cases. FLA. STD. JURY INSTRUCTIONS (Civil) 404.6(a)-(c). Indeed, a careful review of the jury instruction notes for use of 404.06 uniformly hold that causation issues are for the jury. *See Loftin v. Wilson*, 67 So.2d 185, 191 (Fla. 1953); *Hart v. Stern*, 824 So. 2d 927, 932–34 (Fla. 5th DCA 2002); *Marinelli v. Grace*, 608 So.2d 833, 835 (Fla. 4th DCA 1992).

**A. Maintenance Damages, Repairs from Irma and Public Adjustor Fees**

Whether Hawks Nest is entitled to certain damages is an ultimate fact question. There are genuine issues of material fact concerning the cause of Hawks Nest's damages. Hawks Nest's corporate representative testified that as a direct result of Westchester's "mistreat[ment]" and failure to "settle in a timely manner" caused the loss of the building. *Id.* at 89, p.4-9. Due to Westchester's failure to pay the claim and even communicate, the building sat and deteriorated. *Id.* at p. 71:5-14. Hawks Nest's corporate representative testified that if Westchester had paid the claim, even under the Policy's limits, the building would have been back and operating. *Id.* at 71:14 – 72:7. None of these damages would have been sustained. To this point, Hawks Nest's corporate representative testified that Hawks Nest would have settled below the policy limits within 90 days. *Id.* at p. 68:15 – p. 69:11. If Westchester had settled the claim, Hawks Nest would not have had damages for maintenance repairs or repair damages that went to an empty and rotted building.

Westchester also asserts that Hawks Nest is not entitled to seek repairs for Irma, citing collateral estoppel. ECF No. [115], p. 13. However, collateral estoppel is a defense that must be raised. *Richards v. Sen*, 825 F. Supp. 2d 1259, 1262 (S.D. Fla. 2010). Westchester waived this defense when it did not raise it as an affirmative defense. ECF No. [35].

**B.  Lost rental income to individual owners**

Westchester's asserts that Hawks Nest seeks damages sustained by unit owners, rather than itself which are not recoverable. Fla. Stat. § 720.303 explicitly state that after control of the association is obtained by members other than the developer, the association may institute, maintain, settle, or appeal actions or hearings in its name on behalf of all members concerning matters of **common interest to the members**, including, but not limited to, the common areas; roof or structural components of a building, or other improvements for which the association is responsible; mechanical, electrical, or plumbing elements serving an improvement or building for which the association is responsible.

Hawks Nest has the common interest to its owners and standing to seek those damages. Hawks Nest is a timeshare. ECF No. [80-1], p. 5, §IV ; ECF No. [80-2], p. 2.  Because of the nature of a timeshare, Hawks Nest handles both the interior and exterior of the units. ECF No. [80-1], p.6, §VIII.  Hawks Nest's Declaration states that all owners pay a "maintenance fee" which is allocated as follows: the particular unit weeks owner's share of common expenses, as set forth in Paragraph VII above; repair and upkeep of units for normal wear and tear; casualty and/or liability insurance on the unit; utilities for the subject unit; personal property, real estates, and any other applicable taxes. *Id.* Paragraph VII states that any surplus "shall be owned by each unit owners in the same proportion as their percentage ownership interest in the common elements – any common surplus being the excess of all receipts of the Association from this Condominium, including but not limited to, assessments, rents, profits and revenues on account of the common elements of the Condominium, over the amount of the common expenses of the Condominium." *Id.* at pp. 5-6, §VII.  In sum, Hawks Nest shares all losses and profits with the owners.

Because Hawks Nest has the duty to repair all elements of the building, not just the

common elements, any damages to the building are damages to Hawks Nest under the Declarations. The property owned by Hawks Nest sustained damage which prevented the use of the units and common areas. Both Hawks Nest and individual unit owners could not rent out the units either.  Hawks Nest receives 25% of rental income from individual unit owners. ECF No. [92], p. 94:14-17. Thus, Hawks Nest can seek damages that all unit owners sustained from profit sharing, by virtue of the Declarations and common interest. *See Dadeland Depot*, 945 So. 2d at 1243-44.

**C.  Lost rental income to Plaintiff**

Hawk's Nest is to seek recover loss rental income.  Westchester asserts there is no basis for this. Plaintiff owns 28 units/weeks. ECF No. [97-3], p 2. Westchester's forensic accountant expert, Kristen Elkind, confirmed that "within a reasonable degree of accounting certainty, the value of lost net profits is approximately $697,097" from September 2017 through the end of April 2021. ECF No. [97-3].  A reasonable jury can rely on this to conclude Hawks Nest is entitled to at least $697,097.

Hawks Nest could not recover rent because it could not repair the building. Hawks Nest could not repair the building because Westchester failed to pay the claim. ECF No. [92], p. 94:14-17. Thus, a reasonable jury can find Hawks Nest is entitled to lost profits. *Dadeland Depot,* 945 So. 2d at 1243-44.

**D.  Legal fees for coverage action**

In *McLeod v. Continental Insurance Co*., 591 So. 2d 621, 626 (Fla. 1992), the Florida Supreme Court held that attorney's fees and costs, including any fees incurred in the original underlying action due to the insurer's bad faith action are recoverable. Similarly, in *Pearce v. Integon Preferred Ins. Co*., 2019 WL 5294947, at *4 n. 7 (M.D. Fla. Jan. 3, 2019), the court noted

that a party stating a claim under § 624.155 may seek as consequential damages the unrecovered attorneys' fees incurred in prior coverage litigation.

Importantly, while Hawks Nest recovered some of its attorneys' fees with Westchester in the underlying coverage action, it did not recover the full amount its fees and costs. Hawks Nest could not recover all of its fees and costs as damages in the coverage case because the fees and costs were not damages; instead, it recovered those attorney's fees under section 627.428. *See Hawks Nest Condo., Inc. v. Westchester Surplus Lines Ins. Co.*, 366 So. 3d 1184, 1186 (Fla. 3d DCA 2023).

Westchester asserts that Plaintiff cannot seek additional fees not awarded in the underlying action, asserting collateral estoppel.   However, collateral estoppel is a defense that must be raised. *See Richards v. Sen*, 825 F. Supp. 2d 1259, 1262 (S.D. Fla. 2010). Westchester did not raise this as an affirmative defense and it is waived. ECF No. [35].

Moreover, collateral estoppel does not apply. *Diagnostic Leasing, Inc. v. Associated Indemnity Corp.*, 2017 WL 3669491, at *6 (M.D. Fla. Apr. 12, 2017) is instructive. Following a trial where Diagnostic's contractual liability and contractual damages were established, Diagnostic filed suit against Associated under § 624.155. *Id*. at *5. The insurer moved to dismiss, arguing the claims were barred by collateral estoppel. *Id*. at *6. The court rejected this argument, finding the necessary element of collateral estoppel (identity of the issues) had not been met "because the judgment entered in the underlying case was based on Association's contractual obligations under the CGL Policy; which are separate and distinct from this bad faith action." *Id*. (citations omitted); *see also Royal Marco Point I Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 2010 WL 2757240 at *4 (M.D. Fla. July 13, 2010); *MI Windows & Doors, LLC v. Liberty Mut. Fire Ins. Co*., 2018 WL 2288288, at *5 (M.D. Fla. May 18, 2018). Neither the state court in the coverage case nor the jury could

have determined Westchester's liability under Section 624.155 or the damages flowing from that liability. Thus, Hawks Nest's unawarded attorney's fees and costs are valid recoverable damages.

## E. Appraisal fees

Westchester incorrectly asserts that Hawks Nest did not pay its appraiser, Paul Middleton. Plaintiff paid $130,000.00 for his appraiser services. *See Declaration of Molly Chafe Brockmeyer*. Hawks Nest's corporate representative testified that had Westchester resolved the claim earlier and settled, there would be no need for appraisal and thus no money paid on in appraisal fees, including Mr. Middleton's fees and the associated umpire fees. ECF No. [80], p. 7-24. This testimony creates a genuine issue of material fact on causation that precludes summary judgment.

## F. Unpaid appraisal award

The seminal case discussing statutory bad faith damages is *Dadeland Depot*. In *Dadeland Depot*, Dadeland Depot contracted with Walbridge Contracting for the construction of a shopping center. *Dadeland Depot*, 945 So. 2d at 1219. St. Paul Fire and Marine Insurance Company issued a performance bond naming Walbridge as the principal, Dadeland as the owner (obligee), and St. Paul as the surety. *Id*. Under the terms of the bond, if the principal failed to perform under the construction contract, Dadeland was required to notify the surety to trigger its bond obligations. *Id*. After Dadeland did so and St. Paul failed to perform, Dadeland filed a petition for arbitration naming the surety and principal as respondents. *Id.* at 1220. Dadeland sought approximately $4.4 million from St. Paul to repair Walbridge's defective work. *Id*. The arbitration panel awarded far less, and after entry of the award, Dadeland filed suit against the surety seeking extra-contractual damages under Section 624.155. *Id*. Dadeland's extra-contractual damages included the difference between what the arbitration panel awarded as contractual damages and what it spent to repair the construction defects. *Id*. Consistent with *Dadeland Depot*, Hawks Nest is entitled to the unpaid

amount of the appraisal award. *Id.*

### G. Interest

Westchester asserts that Plaintiff is not entitled to seek interest as damages under a theory of collateral estoppel. ECF No. [115], p. 13. Collateral estoppel is a defense that must be raised. *See Richards*, 825 F. Supp. 2d at 1262. Westchester did not raise this as an affirmative defense, and it is waived. ECF No. [35].

Moreover, collateral estoppel does not apply. The facts triggering the Hawk Nest's entitlement to statutory interest are clear and undisputed, and the amount of interest—similar to pre-judgment interest—is an issue of mathematical computation that can be determined as a matter of law. *See SEB S.A. v. Sunbeam Corp.*, 476 F.3d 1317, 1320 (11th Cir. 2007).

Under § 627.70131, Florida Statutes, an insured can recover interest in conjunction with "a viable independent cause of action." *State Farm Fla. Ins. Co. v. Silber*, 72 So. 3d 286, 289-90 (Fla. 4th DCA 2011); Fla. Stat. § 627.70131(5)(a) (2018). A bad faith claim is an appropriate vehicle for enforcing section 627.70131. *See Berkower v. USAA Cas. Ins. Co.*, 2016 WL 4574919, at *10-11 (S.D. Fla. Sep. 1, 2016); *Riley v. Heritage Prop. & Cas. Ins. Co.*, 2023 WL 2988847, at *9 (S.D. Fla. Apr. 18, 2023); *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, 2008 UWL 2490450, 2008 WL 2490450, at *32 (S.D. Fla. June 18, 2008). Section 627.70131(5)(a), therefore, applies because Hawks Nest is asserting independent statutory claims based on (among other things) Westchester's failure to pay Hawks Nest's claim in good faith when, under all the circumstances, it could and should have done so had it acted fairly and honestly and with due regard for their interests. Fla. Stat. § 624.155(1)(b)(1).

A reasonable jury can find that Westchester made a payment more than "90 days after the insurer receive[d] notice of the claim," or— at worst—"more than 15 days after there [were] no

longer factors beyond the control of the insurer which reasonably prevented such payment," even assuming such factors existed here. Fla. Stat. § 627.70131(5)(a) (2021). Indeed, Westchester received notice of the claim no later than September 13, 2017. ECF No. [101-5]. Eventually, Westchester issued Hawks Nest payments on the following dates and in the following amounts:

| Date | Amount | Number of Days |
|------|--------|----------------|
| June 21, 2019 | $104,056.08 | 646 days from notice |
| April 13, 2021 | $5,015,215.75 | 1308 days from notice |
| April 22, 2021 | $23,801.17 | 1317 days form notice |

The statute clearly states that if a payment is "made more than 15 days after there are no longer factors beyond the control of the insurer which reasonably prevented such payment," the insurer still owes "interest at the rate set forth in s. 55.03" accruing from the date of first notice. As shown above, no payments were paid the required time frame – especially not the appraisal award payments from issuance. And even if they were made in compliance with contractual deadlines under the Policy, which they were not, the statute preempts that argument because it provides that section 627.70131 "may not be waived, voided, or nullified by the terms of the insurance policy." Fla. Stat. § 627.70131(5). Consequently, Hawks Nest is entitled to statutory interest on each appraisal award payment, which may be calculated as a matter of law at the statutory rate accruing from September 13, 2017 through the date that each appraisal award payment was made. *See* Fla. Stat. § 627.70131(5)(a).

## **CONCLUSION**

For the reasons stated above, Westchester's Motion for Final Summary Judgment, or, Alternatively, Partial Summary Judgment (ECF No. [115]) should be denied.

## **REQUEST FOR HEARING**

Plaintiff requests a hearing on Westchester's Motion for Final Summary Judgment, or, Alternatively, Partial Summary Judgment (ECF No. [115]), as well as Plaintiff's Motion for Partial Summary Judgment (ECF No. [112]) due to the overlapping legal and factual issues. Given the complexity of Florida's bad faith case law and fact dependent issues discussed in the Motion and this Response, the undersigned believes oral argument would assist this Court should there be any inquiries on the facts and case law.  Plaintiff believes 1 ½ hours to hear argument on the respective motions to be sufficient, allowing each side 45 minutes to present their arguments.

Dated: July 6, 2025

Respectfully submitted,

*/s/ Molly Chafe Brockmeyer*
Mark A. Boyle, Esq.
Fla. Bar. No. 0005886
Molly Chafe Brockmeyer
Fla. Bar. No. 105798
Boyle, Leonard & Anderson P.A.
9111 W. College Point Drive
Fort Myers, FL 33919
Phone: (239) 337-1303
Facsimile: (239) 337-7674
Eservice@Insurance-Counsel.com
MBoyle@Insurance-Counsel.com
MBrockmeyer@Insurance-Counsel.com
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I CERTIFY that on July 6, 2025, I electronically filed this document using the CM/ECF system, which will automatically serve the parties to this action. I am unaware of any non-CM/ECF participants in this lawsuit.

/s/ *Molly Chafe Brockmeyer*
Molly Chafe Brockmeyer
Florida Bar No. 105798